UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
Dallas Division

| | | |
|---|---|---|
| M3Girl Designs, LLC | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09CV2390-F |
| | § | |
| Blue Brownies, LLC, Charlotte Liles, | § | |
| and Krista Dudte, | § | |
|   Defendants. | § | |


PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FOR PATENT PREEMPTION, OR FOR ITS PRIOR
ARGUMENT OF COPYRIGHT PREEMPTION


COMES NOW Plaintiff, M3Girl Designs, LLC, by its counsel, to file this Response in Opposition to the Defendants' Motion to Dismiss For Patent Preemption, as follows:

I.    INTRODUCTION

On January 11, 2010, the Defendants initially argued in its first Motion to Dismiss that the Plaintiff's unfair competition and misappropriation claims were preempted by the United States Copyright Act because the Plaintiff's state law claims were <u>identified</u> to the Plaintiff's copyright infringement claims. *Mtn. to Dismiss, Jan. 11, 2010, p. 3-5.* Specifically, the Defendants argued that Plaintiff's state law claims should be preempted by federal Copyright law because "it fails to meet the 'extra element' test" by requiring any showing above and beyond that required by the Copyright laws. *Id., ¶2.05, p. 5.*

The Defendants' initial copyright preemption arguments were mistaken. In response to the Defendants arguments, the Plaintiff demonstrated that its state law claims included non-copyrightable subject which satisfied the "additional element" test, making a finding of federal preemption under the Copyright Act improper. Namely, the Plaintiff's state law claims included

allegations directed to the improper use and taking of the Plaintiff's business information relating to its jewelry designs. *Plntf's Complaint,¶38-45; see also, Plntf's Resp. to Mtn. to Dismiss, Feb. 1, 2010, p. 20-21.* The Plaintiff also showed that the Plaintiff's state law claims included allegations of the improper taking and using of, as an example, the functional interchangeability aspect of the Plaintiff's jewelry design, which constituted an "extra element" making a finding of federal preemption under the Copyright Act improper. *Id.*

Essentially conceding the fact that the Plaintiff's arguments on copyright preemption were correct, the Defendants appear to have abandoned their prior copyright preemption arguments in favor of an argument directed to a wholly different preemption position. Focusing solely on the functional interchangeable example provided in the Plaintiff's briefing and Complaint (and also ignoring the other non-functional aspects of the Plaintiff's state law claim), the Defendants now contend that the Plaintiff's state law claims are preempted by federal patent protection. So, instead of contending that the Plaintiff's claims are <u>identical</u> to copyright claims, the Defendants now argue that the Plaintiff's claims are <u>identical</u> to patent claims.

The Defendants' second argument regarding patent preemption is also in error. Beyond the interchangeability aspect of the Plaintiff's jewelry designs emphasized by the Defendants, the Plaintiff's state law claims are also directed to the improper use and taking of "information" relating to the Plaintiff's jewelry (e.g. dimensions, specifications, shapes, and sizes of jewelry and accessories) that are <u>not</u> functional and <u>not</u> patentable subject matter. As the Supreme Court in *International New Services* (and its progeny) have repeatedly found, claims relating to the misappropriation of business information are not preempted by federal law, and such claims are the proper subject of state misappropriation claims.[1]

---

[1] *International News Service v. Associated Press*, 248 U.S. 215 (1918).

As also stated by the United States Supreme Court in *Bonito Boats*:

Nor does the fact that a particular items lies within the subject matter of the federal patent laws necessarily preclude the States from offering limited protection which does not impermissibly interfere with the federal patent scheme. As *Sears* itself makes clear, States may place limited regulations on the use of unpatented designs in order to prevent consumer confusion as to source. In *Kewanee*, we found that state protection of trade secrets, as applied to both patentable and unpatentable subject matter, did not conflict with the federal patent laws. In both situations, state protection was not aimed exclusively at the promotion of invention itself, and the state restrictions on the use of unpatented ideas were limited to those necessary to promote goals outside the contemplation of the federal patent scheme. Both the law of unfair competition and state trade secret law have coexisted harmoniously with federal patent protection for almost 200 years, and Congress has given no indication that their operation is inconsistent with the operation of the federal patent laws.

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 109 S. Ct. 971, 985 (1989).

The Plaintiff's state law claims include allegations relating to the Defendants misappropriation of information in an attempt to "use," "duplicate," and "copy" the Plaintiff's well-known "designs, physical dimensions, and specifications" of its products to gain an unfair advantage in the marketplace. *See Complaint, ¶38-43.* The Plaintiff's allegations of consumer confusion and the Defendants improper attempts to cause such confusion are set forth in the Complaint. *See Complaint, ¶13-15; see also, ¶35-37 (Defendants sale of "substantially similar products based on the presence of the Plaintiff's products).*

The federal preemption law relates to "functional" features only, not unpatented aesthetic features of jewelry. See *Bonito Boats, id.* at 980 ("In Sears, the state law offered "the equivalent of a patent monopoly," 376 U.S. 225 at 233, 84 S. Ct. at 789, in the functional aspects of a product which had been placed in public commerce absent the protection of a valid patent."). Many of the "designs, physical dimensions, and specifications" alleged in the Complaint, ¶38-43, include non-functional, aesthetic jewelry features, which are not patentable. As such, the Plaintiff's claims relating to these non-functional features is not preempted by federal patent law.

3

The Defendants have wasted a tremendous amount of time and judicial resources on their flawed preemption arguments, which appear to be based on fluid (and purposeful) misinterpretations of the Plaintiff's state law claims. The Defendant's Motion to Dismiss for Preemption grounds should be denied.

## II.    FACTUAL BACKGROUND

The Plaintiff, M3 Girl Designs, LLC, is a Texas limited liability company formed by two young sisters, Ms. Madeline Bradshaw and Ms. Margot Bradshaw, and their mother, Ms. Diane Bradshaw, for the purpose of marketing and selling interchangeable bottlecap jewelry. The jewelry designs created by M3 Girl Designs include artwork placed within a bottlecap, such as an old-fashioned soft drink bottlecap. Copyright registrations have been obtained on the combination of the bottlecap and the associated artwork.

The Plaintiff's business information relating to its jewelry designs and concepts were perfected through the Plaintiff's significant research and design efforts. A magnet or magnetic attachment is placed on the opposite side of the bottlecap so the wearer can "change out" or interchange the various bottlecaps, but this "functional" aspect is not the only business information developed by the Plaintiff that was alleged to have been taken by the Defendants. Namely, apart from any functional aspect, the Plaintiff's business information relating to the dimensions, configurations, shapes, structures, and sizes of the Plaintiff's jewelry and accessories (e.g. necklace holders, bracelets, point of sale displays) is also subject to the Plaintiff's state law claims.

The Bradshaws created this new market "niche" for bottlecap jewelry, which has proven to be quite successful in the market. With success, regrettably, comes imitation. In the present case, the Defendants entered this market by "riding on the coattails" of two young entrepreneurs.

The Defendants undoubtedly found out about the M3Girl Designs, LLC products, copied the interchangeable bottlecap jewelry products, used the Plaintiff's information to create their own competing products and adopted the Plaintiff's information relating to its designs and concepts. The Defendants even used confusing similar wording as the Plaintiff's trademarks on their website.

All to this conduct is unlawful and unfair competition -- plain and simple. The Defendants are recalcitrant bad faith actors, and for that reason and the reasons set forth herein, the Defendants' Motion to Dismiss should be denied. The Defendants should not be allowed to continue their violations of the law and their infringement of the intellectual property rights held by the Plaintiffs.

## III.   ALLEGATIONS IN THE COMPLAINT

On December 15, 2009, the Plaintiff filed the Complaint in the present matter against Blue Brownies, LLC, Charlotte Liles, and Krista Dudte alleging copyright infringement, misappropriation and unfair competition, trademark infringement, and violations of §43(a) of the Lanham Act.[2]

### A.   General Allegations

8. Plaintiff M3Girl Designs, LLC is a business started by sisters Madeline Bradshaw and Margot Bradshaw, with the supervision and assistance of their mother, Diane Bradshaw. The business creates, manufactures and sells interchangeable bottle cap necklaces having unique artwork.

*  *  *

12. Apart from the uniqueness of producing jewelry on the interior (inside) of the bottle cap and allowing for those jewelry designs to be interchanged with other jewelry

---

[2] One Defendants, Ms. Charlotte Liles has agreed to the entry of a Final Consent Judgment against her, which included admissions that all the Plaintiff's claims (including the state law claims) were committed by her business activities at Blue Brownies, LLC. *See Final Consent Judgment, July 21, 2010, Docket Entry No. 35.*

designs, Plaintiff produces unique artwork that is covered by one or more of the above-identified U.S. Copyright Registrations, including (but not limited to): "Letters on Tye Dye," "Letters on Cheetah Spots"" "Letters on Blue Polka Dots" "Crosses (7 versions)," "Cheer," "Peace Sign," "Peace," "Peace Fingers," "Ballerina Shoes," "Guitar," "I Love Gymnastics," "Soccer Ball," "Basketball," "Volleyball," "Football," "BFF (best friends forever)," "Cupcakes (3 versions)," "Ice Cream Cone," "Butterfly (4 versions)," "Horses," "Drama Queen," "Flowers (4 versions).

13. The Plaintiff also produces three versions of unique "keeper" magnetic boards that hold the bottlecap jewelry designs having a magnetic backing.

14. The Defendants have purposefully, willfully and with bad faith intent copied the jewelry designs created by the Plaintiff, including using the unique concept of selling jewelry designs on the interior (inside) of the bottle cap.

15. The Defendants have purposefully, willfully and with bad faith intent copied the jewelry design created by the Plaintiff, including using the unique concept of selling jewelry designs on the interior (inside) of the bottle cap and allowing for those jewelry designs to be interchanged with other jewelry designs.

16. The Defendants have purposefully, willfully and with bad faith intent copied the jewelry design created by the Plaintiff, including selling jewelry designs on the interior (inside) of the bottle cap that has the following designs (but not limited to): "Letters on Tye Dye," "Letters on Cheetah Spots"" "Letters on Blue Polka Dots" "Crosses (4 versions)," "Cheer," "Peace Sign," "Peace," "Peace Fingers," "Ballerina Shoes," "Guitar," "Gymnastics," "Soccer Ball," "Basketball," "Volleyball," "Football," "BFF (best friends forever)," "Cupcakes (3 versions)," "Ice Cream Cone (3 versions)," "Butterfly (2 versions)," "Horses (2 versions)," "Drama Queen," "Flowers (4 versions)."

17. The Defendant also produces four versions of unique "keeper" magnetic boards that hold the bottlecap jewelry designs having a magnetic backing.

*Complaint, ¶ 8, 12-17, p. 3-4, Dec. 15, 2009, Docket Entry No. 1.*

**B.    Allegations for Unfair Competition and Misappropriation Claims**

35. None of the defendants produced, sold, and/or assisted anyone with the production and sale of substantially similar jewelry products prior to the creation and formation of the Plaintiff's business.

36. None of the Defendants manufactured or sold substantially similar jewelry products prior to the creation and formation of the Plaintiff's business.

37. The Defendants began to manufacture, market, and sell substantially similar interchangeable jewelry products because of the presence of the Plaintiff's products in the market.

38. The Defendants have marketed and sold jewelry products that unlawfully duplicate the Plaintiff's products, including the interchangeable functionality of the Plaintiff's products.

39. The Defendants have improperly misappropriated information regarding the design, physical dimensions and specifications of the Plaintiff's jewelry products, including the interchangeable functionality of the Plaintiff's products.

40. The Defendants have gained an unfair advantage in the marketplace by capitalizing on the design, physical dimensions and specifications of the Plaintiff's jewelry products, including the interchangeable functionality of the Plaintiff's products.

41. The Plaintiff has a pecuniary interest to information regarding the design, physical dimensions and specifications of the Plaintiff's jewelry products, including the interchangeable functionality of the Plaintiff's products.

42. The Defendants have profited from the improper use of Plaintiff's information relating to its jewelry products, including the interchangeable functionality of the Plaintiff's products.

43. The improper and unauthorized use, duplication, and copying of information regarding the Plaintiff's jewelry products, including the interchangeable functionality of the Plaintiff's products, has damaged, and will continue to damage, the Plaintiff's business.

*Complaint, ¶35-43, p. 7-8, Dec. 15, 2009, Docket Entry No. 1.*

## IV.   ARGUMENT

Federal law preempts state law claims only if the state law protects specifically enumerated rights already protected by federal Copyright law or federal Patent law.  *17 U.S.C. § 301*; *Daboub v Gibbons*, 42 F.3d 285 (5th Cir. 1995).  A state law claim is not preempted if the state law requires an "extra element" instead of or in addition to the acts enumerated in the federal protection.  *See e.g.* 17 U.S.C. §106; *Direct TV Inc. v. Cantu*, 2004 U.S. Dist. LEXIS 22715 (W.D. Tex. 2004).  In particular, state law claims are not preempted if the "extra element" changes the nature of the action so that it is qualitatively different from the federal infringement

claim. *Id.* To determine whether a claim includes an extra element, courts should ascertain what rights the plaintiff seeks to protect and what theories the plaintiff relies upon for protection. *Id.*

In general, misappropriation is a branch of the tort of unfair competition which involves the appropriation and use of a unique pecuniary interest created by another through the expenditure of labor, skill and money. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 368 (5th Cir. 2000). To prevail on this claim, the Plaintiff must show that: (1) he created a product through extensive time, labor, skill and money, (2) the Defendants used the product in competition with him, thereby giving her a special competitive  advantage (that is, a "free ride") because she was burdened with little or none of the expense incurred by the Plaintiff in creating the product, and (3) he was commercially damaged by such use. *Id., see also, United States Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App. Waco 1993, writ denied).

The Fifth Circuit Court of Appeals in *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 155-56 (5th Cir. 1985), recognized that "Texas courts have consistently expanded the scope of protection afforded by the unfair competition laws." *Id. (citing Capital Films Corp. v. Charles Fries Productions, Inc.*, 628 F.2d 387, 394 (5th Cir. 1980), *and Universal City Studios, Inc. v. Kamar Industries, Inc.*, 217 U.S.P.Q. (BNA) 1162, 1168 (S.D. Tex. 1982) (finding that a cause of action for misappropriation of a merchandising property exists under Texas law)). To prevail on a misappropriation of a merchandising property claim, the plaintiff must demonstrate that the defendant appropriated and used its property (e.g., trademark or other unique pecuniary interest) without its authority and in competition with its own licensing program. *Conan's, id. Warner Brothers, Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981); *Universal City Studios*, 217 U.S.P.Q. at 1168.

8

As shown above, Paragraph 35-43 of the Complaint describe the Plaintiff's state law claims. *Complaint, ¶35-43, p. 7-8, Docket Entry No. 1.* The basis for the Plaintiff's misappropriation and unfair competition claims[3] includes the improper misappropriation of information regarding the design, physical dimensions, configurations, shapes, sizes, and specifications relating to the Plaintiff's jewelry products and product accessories. *Id.* This information developed by the Plaintiff also includes, as an example, the unfair use and taking of the Plaintiff's concept of selling interchangeable bottlecap jewelry. All of this information was created and developed by the Plaintiff, M3 Girl Designs, and this is the information that was taken by the Defendants.

## A. There Is No Preemption Based on Copyright Law

The Copyright Act protects artistic works of authorship, but the Copyright Act does not protect a functional aspect, such as an interchangeable jewelry component, of a product design.[4] Because the Plaintiff's state law claims also includes at least one functional aspect of the jewelry concept, the misappropriation and unfair competition claims extend beyond the federal copyright laws. These state law claims require an "additional element" of proof apart from the proofs needed for copyright infringement, which necessarily negates the Defendants' preemption argument. Under the "extra element" test, the Plaintiff's state law claims are not preempted by

---

[3]  See, generally, *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 14 (5th Cir. 1974) (unfair competition is an umbrella for all unfair business practices). Misappropriation is a branch of the tort of unfair competition which involves the appropriation and use by the defendant, in competition with the plaintiff, of a unique pecuniary interest created by the plaintiff through the expenditure of labor, skill and money. *See Conan Properties v. Conans Pizza, Inc.,* 752 F.2d 145, 156 (5th Cir. 1985). *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214 (Tex. App. Waco 1993, writ denied); *Sefton v. Jew,* 201 F. Supp. 2d 730, 745 (W. D. Tex. 2001) (separate claims that fall within a general category of unfair competition).

[4]  The Plaintiff uses the word "design" in this context to describe something other than the artistic "designs" or artwork covered by it copyrights.

the Federal Copyright law.  Accordingly, the Defendants' Motion to Dismiss the Texas state law unfair competition and misappropriation claims should be denied.

### 1.    *Rally Concepts* Precedent

The Defendants rely upon *Rally Concepts v. RNC, et al.,* 2006 U.S. Dist. Lexis 61030 (E.D. Tex. Aug. 28, 2006) to support its preemption defense and request for dismissal of the Plaintiff's misappropriation and unfair competition claims.  *Rally Concept*, however, addressed the alleged use of the <u>same</u> visual image in the copyright infringement and misappropriation claims.  The Plaintiff's copyrighted image was discussed with representatives of the Republican Party (e.g Ed Gillespie) and is pictured below (left), and the Defendant's subsequently developed the accused work shown below right.

    

The Plaintiff alleged that his copyrighted design was infringed when it was used to produce the iconic symbol (above right) used to promote Mr. George W. Bush during his Presidential Campaign, and the Plaintiff alleged that the copying of the design also constituted misappropriation of the Plaintiff's work.

As set forth in Judge Folsom's opinion in *Rally Concepts,* both the copyright and misappropriation claims related to the accused use and misappropriation of the same thing – the copyrighted design.  *Id.*  Also, the *Rally Concepts* court found that proof of the misappropriation claim would necessary overlap entirely with the proof on the copyright infringement issues.  *Id.* As found by that Court, the misappropriation claim in *Rally Concepts* was subject to the provisions of the Copyright Act, but the *Rally Concepts* Court found that the unfair competition

10

claim was not preempted by federal Copyright Laws because it required an extra element relating to the conspiracy allegations.  *Id.*

## 2.    The Plaintiff's Copyright Claims At Issue – Non-Functional Designs

The Plaintiff's Copyright Claim is set forth in Count I of the Complaint, which is partially described as follows:

> 12.    Apart from the uniqueness of producing jewelry on the interior (inside) of the bottle cap and allowing for those jewelry designs to be interchanged with other jewelry designs, Plaintiff produces unique artwork that is covered by one or more of the above-identified U.S. Copyright Registrations, including (but not limited to): "Letters on Tye Dye," "Letters on Cheetah Spots"" "Letters on Blue Polka Dots" "Crosses (7 versions)," "Cheer," "Peace Sign," "Peace," "Peace Fingers," "Ballerina Shoes," "Guitar," "I Love Gymnastics," "Soccer Ball," "Basketball," "Volleyball," "Football," "BFF (best friends forever)," "Cupcakes (3 versions)," "Ice Cream Cone,"   "Butterfly (4 versions)," "Horses," "Drama Queen," "Flowers (4 versions).

*Complaint, Docket Entry No. 1, December 15, 2009, ¶12, p. 3.*  These allegations are directed to the bottlecap jewelry having an artistic design on the interior of the bottlecap.  The Plaintiff's copyrighted bottlecap designs are shown, for example, below.




The Plaintiff alleged that copyright infringement occurred with the Defendants' manufacture, distribution and sale of substantially similar bottlecap jewelry designs as follows:

Response in Opposition to
Motion to Dismiss (Preemption)

16.     The Defendants have purposefully, willfully and with bad faith intent copied the jewelry design created by the Plaintiff, including selling jewelry designs on the interior (inside) of the bottle cap that has the following designs (but not limited to): "Letters on Tye Dye," "Letters on Cheetah Spots"" "Letters on Blue Polka Dots" "Crosses (4 versions)," "Cheer," "Peace Sign," "Peace," "Peace Fingers," "Ballerina Shoes," "Guitar," "Gymnastics," "Soccer Ball," "Basketball," "Volleyball," "Football," "BFF (best friends forever)," "Cupcakes (3 versions)," "Ice Cream Cone (3 versions)," "Butterfly (2 versions)," "Horses (2 versions)," "Drama Queen," "Flowers (4 versions)."

*Complaint, Docket Entry No. 1, December 15, 2009, ¶16, p. 4.*

As shown above, the copyright infringement claims are directed to "non-functional," copyrightable subject matter – that is artistic expressions embodied by artwork that includes a bottlecap that has its interior designed and decorated.  This is copyrightable subject matter is covered under §102(5) of the Copyright Act for two and three dimensional jewelry designs.  17 U.S.C. §102(5) (covers pictorial, graphic, and sculptural works).

### 3.     As an Example, Functional Aspects Are "Included" As One Aspect of the Plaintiff's Misappropriation and Unfair Competition Claims

In contrast to these copyright claims, the Plaintiff's Misappropriation and Unfair Competition claims are directed to the improper use and misappropriation of the Plaintiff's information, which includes, *inter alia,* the "interchangeable functionality of the Plaintiff's products." *Complaint, ¶39-43, p. 8.*  These allegations are set forth below:

39.     The Defendants have improperly misappropriated information regarding the design, physical dimensions and specifications of the Plaintiff's jewelry products, *including the interchangeable functionality of the Plaintiff's products.*

40.     The Defendants have gained an unfair advantage in the marketplace by capitalizing on the design, physical dimensions and specifications of the Plaintiff's jewelry products, *including the interchangeable functionality of the Plaintiff's products.*

41.     The Plaintiff has a pecuniary interest to information regarding the design, physical dimensions and specifications of the Plaintiff's jewelry products, *including the interchangeable functionality of the Plaintiff's products.*

42.     The Defendants have profited from the improper use of Plaintiff's information relating to its jewelry products, *including the interchangeable functionality of the Plaintiff's products.*

43.     The improper and unauthorized use, duplication, and copying of information regarding the Plaintiff's jewelry products, *including the interchangeable functionality of the Plaintiff's products*, has damaged, and will continue to damage, the Plaintiff's business.

*Complaint, ¶39-43, p. 8 (emphasis added)(each misappropriation allegation includes, for example, a "interchangeable functionality" feature relating to Plaintiff's products).*

### a. Interchangeable Magnetic/Metal Interface Functionality

By "interchangeable functionality," the Plaintiff is describing the process developed, marketed and popularized by the Plaintiff for interchanging the "bottlecap jewelry" on necklaces or other apparel components worn on a person's body.   Namely, as part of this process and interchangeability system, the consumer can interchange the bottlecap jewelry elements using a magnetic backing on the bottlecap jewelry element.




The metal element, shown above, makes contact with the magnetic component on the back of the bottlecap to hold the jewelry item in place on the wearer's body or neck.

**b.  The Defendants' Misappropriation and Unfair Competition**

As shown on the Defendants' website, their bottlecap necklaces are "magnetic and interchangeable," which the Defendants contend is "the coolest part about these bottlecap necklaces."  As shown below, two of the Defendants' webpages evidence their misappropriation of the interchangeable functionality developed, marketed and promoted by the Plaintiffs.



14



The Defendants have offered no evidence to support any claim of independent development of their offered "interchangeable" and "magnetic" bottlecap jewelry concept. In fact, the Defendants are requesting that this Court dismiss this misappropriation claim without having to address that matter or have this Court consider the manner in which the Defendants began their uncannily similar business of offering "interchangeable," "magnetic" bottlecap jewelry that "allows you to easily change the bottlecaps." *See above webpages.*

### 4.   The Misappropriation and Unfair Competition Claims Are Not Preempted by Copyright Law

The Plaintiff's copyright registrations at issue are directed to the front side of the bottlecap jewelry, which include the bottlecap designs having artwork placed in the interior of the bottlecap. The "interchangeable" functionality of the Plaintiff's jewelry designs is located on the backings of the bottlecaps and the apparel accessories offered with the Plaintiff's interchangeable jewelry. As such, the Plaintiff's state law claims include the misappropriation of

15

information that is directed to the "interchangeable" functionality of the jewelry, which is not copyrightable subject matter.

As set forth in 17 U.S.C. §102(b), copyright rights do not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery." *17 U.S.C. §102(b)*.  The Plaintiff's interchangeability functionality is not copyrightable subject matter, and the Plaintiff's claims are not directed to the same thing, or an equivalent, to that covered by the Copyright laws of the United States.  This fact alone distinguishes the present case from the facts in the *Rally Concepts, Keane* and *Katz Dochrermann* precedent relied upon by the Defendants, as well as the other precedent cited by the Defendants.  *See Southwest Airlines  v. Farechase, Inc.,* 318 F. Supp. 435, 440-41 (N.D. Tex. 2004) (J. Sanders)(rejecting preemption defense against misappropriation claim).

Contrary to the Defendants' arguments, the Plaintiff's misappropriation and unfair competition claims does not assert an "equivalent" to the copyright claim because the Plaintiff's state law claims are directed to "non-copyrightable" subject matter on the magnetic/metal-based interchange functions of the jewelry.  *Defendants' Reply Brief, D.E. No. 14, p. 6.*  This is a functional process and procedure that allows the consumer to "swap out" and interchange the jewelry designs using a magnetic/metal combination.   Also, contrary to the Defendants' arguments, the Plaintiff's state law claim cannot be "equivalent" to the copyright claim because the state law claim covers aspects that are not copyrightable subject matter, which cannot be a prerequisite of the Plaintiff's copyright claim.  *17 U.S.C. §102(b), Defendants' Reply Brief, D.E. No. 14, p. 9 (citing Schugart & Associates, Inc. v. Solo Serve Corp.,* 540 F. Supp. 928 (W.D. Tex. 1988) (must prove copying of the same thing to prove both asserted copyright and state law claim)).

16

As shown herein, the Plaintiff will not need to prove "interchangeability" of the Defendants' jewelry magnetic/metal backings to prove its claim for copyright infringement. In fact, interchangeability of the jewelry designs is irrelevant to substantial similarity of the jewelry designs. Likewise, the Plaintiff will not need to show "substantial similarity" of the front/interior of bottlecap jewelry art work in order to prove misappropriation and unfair competition by the Defendants' taking of the Plaintiff's information.

The present case is analogous to *Brown v. Ames,* 201 F. 3d 654, 657-661 (5th Cir. 2000), where the Fifth Circuit conducted an extensive analysis of the interactions between misappropriation and Copyright claims, and found no preemption defense was supported because the Plaintiff's misappropriation "neither falls within the subject matter of copyright nor conflicts with the purposes or objective of the Copyright Act." *Id. at 661.*

The Plaintiff is not trying to "cast" a copyright claim in the "voice of state law claims" because the state law claim cannot be covered by the copyright laws and the Plaintiff's state law claims do "not touch on interests" protected by the Copyright laws. *Defendants' Reply Brief, D.E. No. 14, p. 7.* The cases cited by the Defendants are directed to the same accused activities in both copyright and state law claims, whereas the Plaintiff believes, based on the above description, that the Defendants' misappropriation conduct is independently actionable from the copyright infringement claim because it is not directed to rights covered by Copyright law.

The Fifth Circuit has consistently recognized the viability of Texas misappropriation and unfair competition claims directed to "sweat equity" of the Plaintiff, taken by the Defendant to gain an unfair advantage in the market. *See, Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F. 3d 772, 788 (5th Cir. 1999) (*citing United States Sporting Goods Products, Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W. 2d 214, 218 (Tex. App. Waco 1993, *writ denied)(Texas*

*misappropriation claim protects "sweat equity" that goes into creating a work), and citing International News Serv. v. Assoc. Press,* 248 U.S. 215, 239 (1918)).   The Plaintiff's state law claims are not simply directed to the copying of the Plaintiff's jewelry design as argued by the Defendants, but as alleged in the Complaint and explained herein, these claims are directed to the copying of jewelry designs and the unfair taking of novel, functional concepts developed by the Plaintiff's own "sweat equity."

The Plaintiff believes Judge Barefoot Sanders correctly found, in *Southwest Airlines Co. v. Farechase, Inc.,* 318 F. Supp. 435, 440-41 (N.D. Tex. 2004), that no federal preemption arises where the Plaintiff asserts a claim that falls outside "the subject matter of the copyright law." *Id.* ("The Court finds that Southwest does not assert a claim against Outtask that would fall within the subject matter of copyright law. See also *Sefton v. Jew,* 201 F. Supp.2d 730, 746 (W.D.Tex. 2001)." and "Thus, the first condition in the test to determine if a state cause of action is preempted by the copyright law has not been satisfied. The Court need not reach the second factor.")   For these reasons, the Plaintiff's claims are not preempted by the Copyright Act.

### B.   The Texas State Law Claims for Misappropriation and Unfair Competition Are Not Preempted By Federal Patent Law

Beyond any interchangeable aspect of the Plaintiff's jewelry designs emphasized by the Defendants, the Plaintiff's state law claims are also directed to the improper use and taking of "information" relating to the Plaintiff's aesthetic jewelry designs (e.g. dimensions, specifications, shapes, and sizes of jewelry and accessories) that are not functional and not patentable subject matter.   As the Supreme Court in *International New Services* (and its progeny) have repeatedly found, claims relating to the misappropriation of business information are not preempted by federal law, and such claims are the proper subject of state misappropriation claims.[5]

---

[5]  *International News Service v. Associated Press*, 248 U.S. 215 (1918).

As also stated by the *Bonito Boats* precedent,

> Nor does the fact that a particular items lies within the subject matter of the federal patent laws necessarily preclude the States from offering limited protection which does not impermissibly interfere with the federal patent scheme. As *Sears* itself makes clear, States may place limited regulations on the use of unpatented designs in order to prevent consumer confusion as to source. In *Kewanee*, we found that state protection of trade secrets, as applied to both patentable and unpatentable subject matter, did not conflict with the federal patent laws. In both situations, state protection was not aimed exclusively at the promotion of invention itself, and the state restrictions on the use of unpatented ideas were limited to those necessary to promote goals outside the contemplation of the federal patent scheme. Both the law of unfair competition and state trade secret law have coexisted harmoniously with federal patent protection for almost 200 years, and Congress has given no indication that their operation is inconsistent with the operation of the federal patent laws.

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 109 S. Ct. 971, 985 (1989).

The Plaintiff's state law claims include allegations relating to the Defendants misappropriation of information in an attempt to "use," "duplicate," and "copy" the Plaintiff's well-known "designs, physical dimensions, and specifications" of its products to gain an unfair advantage in the marketplace. *See Complaint, ¶38-43.* The Plaintiff's allegations of consumer confusion and the Defendants improper attempts to cause such confusion are set forth in the Complaint. *See Complaint, ¶13-15; see also, ¶35-37 (Defendants sale of "substantially similar" products based on the presence of the Plaintiff's products).*

The federal preemption law relates to "functional" features only, not unpatented aesthetic features of jewelry. See *Bonito Boats, id.* at 980 ("In Sears, the state law offered "the equivalent of a patent monopoly," 376 U.S. 225 at 233, 84 S. Ct. at 789, in the functional aspects of a product which had been placed in public commerce absent the protection of a valid patent."). Many of the "designs, physical dimensions, and specifications" alleged in the Complaint, ¶38-43, include non-functional, aesthetic jewelry features, which are not patentable. As such, the Plaintiff's claims relating to these non-functional features is not preempted by federal patent law.

19

### 1.   Non-Functional Jewelry "Design, Physical Dimensions, and Specifications"

In Paragraphs 35-43, the Complaint repeatedly refers to the Plaintiff's jewelry "designs, physical dimensions, and specifications," which are shown in the photographs below.   To be clear, the Plaintiff's reference to "designs, physical dimensions, and specifications" is not meant to refer to the copyrighted artwork.   For instance, the Plaintiff's jewelry designs include a bottlecap shape and design that is combined with purely aesthetic, non-functional jewelry features, such as being placed on "chocker," "necklace," "bracelet," "bow," "ankelet," or "display board" as shown below.








 

The Plaintiff's jewelry designs include a functional aspect of interchangeability, but the "designs, physical dimensions, and specifications" alleged in Paragraphs 39-43 of the Complaint also include purely aesthetic aspects that are not "functional," and therefore not "patentable" subject matter.  For instance, different types of necklaces, anklets, and display boards are made available to allow the consumer – but these aesthetic elements are part of the jewelry design, not a functional feature.  These non-functional jewelry designs were also developed and perfected by the Plaintiff based on significant investment of time, money and effort – all of which has been taken by the Defendants at the expenditure of basically nothing (except what it cost for the Defendants to misappropriate those aesthetic designs).

> 2.   **Texas Law Supports the Plaintiff's Misappropriation and Unfair Competition Claims**

Texas unfair competition law sensibly fills the gap created in such situations through the common law tort of unfair competition through misappropriation of time, labor, skill and money. The Texas Court of Appeals stated in *United States Sporting Products v. Johnny Stewart Game Calls*, 865 S.W.2d 214, 217 (Tex. App. — Waco 1993, writ denied):

> The doctrine of misappropriation is a branch of the tort of unfair competition which involves the appropriation and use by the defendant, in competition with the plaintiff, of a

21

unique pecuniary interest created by the plaintiff through the expenditure of labor, skill and money. [cites omitted]. It is recognized under Texas law.

Unfair competition through common law misappropriation of time, labor, skill and money requires proof of three prima facie elements:

the creation of plaintiff's information or product through extensive time, labor, skill and money; the defendant's use of that information or product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because the defendant is burdened with little or none of the expenses incurred by the plaintiff and; commercial damage to the plaintiff.

*Id.*

The Waco Court of Appeals in *United States Sporting Goods* was not the first court to hold that this type of misappropriation is a form of unfair competition. The United States Supreme Court first handed down such guidance in *International News Service v. Associated Press*, 248 U.S. 215 (1918), where the International News Service stole news items gathered by Associated Press and sold them competitively.  The Supreme Court, recognizing the misappropriation claim, stated that:

This defendant . . . admits that it is taking material that has been acquired by complainant as the result of organization and expenditure of labor, skill and money, and . . . that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown . . . with special advantage to defendant in the competition because of the fact that it is not burdened with any part of the expense[.]

*Id.* at 239 (emphasis added) (quoted in *United States Sporting Products*, 865 S.W.2d at 217).

The Texas Supreme Court adopted the *International News Service* holding in *Gilmore v. Sammons*, 269 S.W. 861 (Tex. Civ. App. – Dallas 1925, writ ref'd).  In *Gilmore*, the plaintiffs created a valuable property right in information and the conveyance of that information through "great expense" and through the "expenditure of great labor." *Id.* at 863.  Defendant then entered into the very same business as plaintiff and used plaintiff's product and hard earned information

to compete for "the same kind of [ ] service and for identically the same purposes, serving in large measure the same constituency." *Id.* at 862.

The *Gilmore* Court, finding that the defendant had unfairly competed through the misappropriation of plaintiff's intellectual property, emphasized the fact that the defendant had taken a short-cut to reach the point "where the profit is to be reaped."  In other words, the defendant received a "special advantage [ ] in competition because of the fact that [the defendant] was not burdened with any part of the expense of [creating the intellectual property]."  Id. at 863.  Put simply, it is another's attempt to "reap where they have not sown" that offends Texas law.

In short, in instances where a client's investment of extensive time, labor, skill and money in information has been unfairly appropriated, Texas' common law tort of unfair competition through misappropriation effectively fills the gap.  In *Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F. 3d 358 5th 2000), the Court of Appeals for the 5th Circuit stated:

> The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial 368 matters. *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir.1974).

Misappropriation is a branch of the tort of unfair competition which involves the appropriation and use by the defendant, in competition with the plaintiff, of a unique pecuniary interest created by the plaintiff through the expenditure of labor, skill and money. *See Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 156 (5th Cir.1985).  The Texas state misappropriation law is specifically designed to protect the labor, the so-called "sweat equity", that goes into creating a work.

### 3.     The Plaintiff's State Law Claims Are Not Preempted By Federal Patent Law

The United States Supreme Court's holding in *Kewanee, Inc. v. Bicron Oil*, 416 U.S. 470 (1974), Texas' tort of unfair competition through misappropriation appears to pass preemption muster with respect to the Patent Act.  In this manner, the tort's reach extends to intellectual property that is not patentable by itself.  Federal law will preempt a state law claim only if the state law protects specifically enumerated rights already protected by federal Copyright law or federal Patent law.  *17 U.S.C. § 301*; *Daboub v Gibbons*, 42 F.3d 285 (5th Cir. 1995).  A state law claim is not preempted if the state law requires an "extra element" instead of or in addition to the acts enumerated in the federal protection.  *See e.g.* 17 U.S.C. §106; *Direct TV Inc. v. Cantu*, 2004 U.S. Dist. LEXIS 22715 (W.D. Tex. 2004).

In the context of the present case, the Plaintiff must prove elements of the state law claim that are unrelated to the claim of patent infringement.  For instance, the Plaintiff M3Girl Designs must prove "commercial damage" to the plaintiff resulting from the Defendants' misappropriation and unfair competition.  A patent holder, however, does not need to submit evidence of damages to succeed in proving patent infringement – he must simply show the Defendants' unauthorized making, using or selling of a device covered by the patent claims. Damages are a required element in the Plaintiff's state law claim, which makes that an additional element differentiating the Plaintiff's present claims from the federal patent claims.

Further, the Plaintiff must submit evidence of "the creation of plaintiff's information or product through extensive time, labor, skill and money," and "the defendant's use of that information or product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because the defendant is burdened with little or none of the expenses incurred by the plaintiff."  The need to make proofs of the Plaintiff's expenditures or

the Defendants' "free ride" advantages is also not required in a patent infringement matter. Again, a patent holder must simply show the Defendants' unauthorized making, using or selling of a device covered by the patent claims – whether he developed his invention through extensive expenditures (or not) is irrelevant if his invention is patentable, and whether the Defendants are gaining an advantage from the use of the patented invention is, likewise, irrelevant if they can be shown to be using the patented invention.  As such, these elements of "expenditures" and unfair "advantages" are additional elements not required in a patent infringement case.

Further, there are significant differences between the Plaintiff's state law claims and a patent infringement claim.  In order to establish a claim of patent infringement the patentee must often demonstrate the patent is valid, which requires a showing that the invention is useful, novel and non-obvious.  *See 35 U.S.C. §101 (utility), §102 (novelty requirements), and §103 (non-obviousness).*  In the present case, the Plaintiff M3Girl Designs admits that many of its jewelry designs, dimensions, and specifications are "non-functional," or possess no utility.  In essence, many of the Plaintiff's choices about the jewelry designs, specifications and dimensions were based on aesthetics, not utility or functionality – which distinguishes the Plaintiff's claims from a patent infringement matter.  For the foregoing reasons, the Plaintiff's state law claims relating to jewelry "designs, dimensions, and specifications," are not preempted by federal patent law.

## V.      CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Defendants' Motion to Dismiss as Preempted should be denied.

Date:  August 25, 2010                         Respectfully submitted,


                                               /s/ D. Scott Hemingway
                                               D. Scott Hemingway
                                               Attorney-in-Charge
                                               Texas Bar No. 09407880
                                               Hemingway & Hansen, LLP
                                               1717 Main Street, Suite 2500
                                               Dallas, Texas  75201
                                               Ph: (214) 292-8301
                                               Fax: (214) 739-5209
                                               **Attorneys for**
                                               **Plaintiff M3Girl Designs, LLC**

Response in Opposition to
Motion to Dismiss (Preemption)

**CERTIFICATE OF SERVICE**

I certify that the foregoing was sent directly to the Defendants at the following address via the ECF-Pacer system this day of August 25, 2010.


/s/ D. Scott Hemingway
D. Scott Hemingway

Response in Opposition to
Motion to Dismiss (Preemption)