

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| M3Girl Designs, LLC<br>  Plaintiff, | §<br>§<br>§ | |
| v. | § | Case No. 3:09-CV-2390-F |
| | § | |
| Blue Brownies, LLC and Krista Dudte,<br>  Defendants. | §<br>§<br>§ | |

# ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S STATE LAW CLAIMS DUE TO FEDERAL PREEMPTION

BEFORE THE COURT is Defendants' Rule 12(b)(6) Motion to Dismiss State Law Claims Due to Federal Preemption (Docket No. 7). A hearing was held in this matter on March 22, 2010.[1] After considering the arguments of the parties, the briefs, and the applicable law, the Court GRANTS Defendants' Motion to Dismiss (Docket No. 7).

## Background

This suit concerns a dispute between two competitors in the bottlecap jewelry market. Plaintiff M3Girls Designs, LLC, creates, manufactures, and sells bottlecap jewelry, which

---

[1] At the hearing, the parties also presented arguments regarding Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Defendants' Motion to Transfer, and Plaintiff's Motion for Leave to Take Jurisdictional Discovery. At the conclusion of the hearing, the Court granted leave to take jurisdictional discovery, but Defendants subsequently withdrew their Plea to the Jurisdiction as well as their Motion to Transfer (Docket Nos. 30–33). Plaintiff and Defendant Charlotte Liles later agreed to the entry of a Final Consent Judgment (Docket No. 35). Therefore, the only pending motion remaining in this case is Defendants Blue Brownies, LLC, and Krista Dudte's Motion to Dismiss State Law Claims Due to Federal Preemption.

primarily consist of a bottlecap, artwork placed inside of the bottlecap, and magnet on the backside of the bottlecap. The magnet gives the jewelry an interchangeable function, allowing consumers to place different bottlecaps on the same item of jewelry, such as a necklace or bracelet. Plaintiff alleges that Defendants Blue Brownie, LLC, and Krista Dudte (an officer of Blue Brownie) sell "substantially similar"—if not identical—products.

Asserting that it created a new market niche for bottlecap jewelry, Plaintiff sued Defendants for copyright infringement, various violations of the Lanham Act (including trademark infringement), and unfair competition under state law. Defendants have moved to dismiss the state-law claim on the ground that it is preempted by federal law.

Initially, Defendants only asserted preemption by federal copyright law, and the Court held a hearing on this issue. Plaintiff responded that its state-law claim covers more than copyright infringement, noting that its copyright claim is directed to the "front side of the bottlecap jewelry." It maintained that its state-law claim regards the interchangeable magnets, a functional aspect of the jewelry not subject to copyright law. Indeed, it characterized its state-law claim as "directed to a functional aspect of the jewelry."

Seizing on this response, Defendants shifted their focus to preemption by federal patent law.[2] Noting that Plaintiff has not obtained any patents, Defendants now argue that the functional design falls within the realm of patent law, and that any state-law claims based

---

[2] On July 30, 2010, after the hearing regarding copyright preemption, Defendants sought leave to file a supplemental brief regarding patent preemption (Docket No. 36), which the Court granted (Docket No. 38).

on functional designs are preempted. Plaintiff has shifted its position as well. While admitting that the interchangeable magnets are a functional feature, it argues that its state-law claim also regards the jewelry's nonfunctional aspects. It thus asserts that its state-law claim encompasses the "improper use and taking of 'information' related to the Plaintiff's aesthetic jewelry designs (e.g., dimensions, specifications, shapes, and sizes of jewelry and accessories) that are not functional and not patentable."

## Discussion

It is well-established that patent law can preempt state-law claims, including unfair competition claims. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) (boat design and construction law); *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964) (unfair competition law); *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964) (unfair competition law); *cf. Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974) (upholding state trade-secret law but affirming the rationale in *Sears* and *Compco*). State law cannot "'stand[] as an obstacle to the accomplishment . . . of the full purposes and objectives of Congress.'" *Kewanee Oil*, 416 U.S. at 479 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). To determine whether the state law is an obstacle, courts examine the objectives of both patent and state law. *Id.* at 480. Unfortunately, "[t]he line between the permissible and the impermissible exercise of state power has become difficult to discern." *Synercom Tech., Inc. v. Univ. Computing*, 474 F. Supp. 37, 40–41 (N.D. Tex. 1979) (Higginbotham, J.) (patent preemption). In assessing whether a particular claim is preempted, the court should look to

3

the specific facts alleged in the context of the tort, not merely the elements of the tort itself. *See id.* at 39 (analyzing whether the state could punish the specific conduct at issue).

## A. The State-Law Claim

### 1. The Scope of Plaintiff's Complaint

Plaintiff expressly alleges state-law claims for "misappropriation" and "unfair competition." These terms are often used interchangeably and inconsistently. The prevailing view, however, is that "'[t]he law of unfair competition is the umbrella for all . . . causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). "Unfair competition" thus encompasses various independent causes of action, such as trade-secret misappropriation, palming off,[3] misappropriation of business opportunity,[4] trade name infringement, and trademark infringement. *Id.*; *Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing & Heating*

---

[3] "Palming off" is using the plaintiff's "name, symbols or devices" in an attempt "to deceive and cause the public to trade with the [defendant] when they intended to and would otherwise have traded with the [plaintiff]." *McCarley v. Welch*, 170 S.W.2d 330, 332 (Tex. Civ. App.—Dallas 1943, no writ).

[4] Texas courts have not used the term "misappropriation of business opportunity," instead referring to the tort simply as "misappropriation." Given the widespread use of the term "misappropriation" in various contexts, the Court will use the more specific term, as others courts have done when discussing Texas unfair competition law. *See McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 925 n.2 (Fed. Cir. 1995); *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 558 (N.D. Tex. 1997) (Sanders, J.). This term also has the benefit of more accurately describing the conduct that the tort prohibits.

4

*Co.*, 695 S.W.2d 75, 78 (Tex. App.—San Antonio 1985, no writ). Accordingly, some courts hold that liability for unfair competition requires a finding that the alleged tortfeasor committed some other independent substantive tort or an illegal act. *See Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied) (holding that defendant was not liable for tortious interference with a contract and thus could not be held liable for unfair competition); *Hassan v. Greater Houston Transp. Co.*, 237 S.W.3d 727, 734 n.7 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (noting that error in jury charge for trade dress infringement prevented liability for unfair competition).

Although the scope of unfair competition law is unclear, Plaintiff's brief clarifies that it only alleges the specific tort of misappropriation of business opportunity. It acknowledges that unfair competition is an umbrella tort and only discusses the elements of misappropriation of business opportunity. Plaintiff also invokes the U.S. Supreme Court case that first recognized this tort, *see Int'l News Serv. v. Assoc. Press*, 248 U.S. 215 (1918), as well as the few Texas cases that have followed it, *see U.S. Sporting Prods.*, 865 S.W.2d 214; *Gilmore v. Sammons*, 269 S.W. 861 (Tex. Civ. App.—Dallas 1925, writ ref'd). Plaintiff does not allege that Defendants have improperly acquired trade secrets, used its trade name, palmed off its goods, or engaged in any other recognized form of unfair competition. To be sure, it does allege that Defendants sold "substantially similar" jewelry and "duplicate[d]"

Plaintiff's products, but it does not tie those allegations to any other unfair competition tort.[5]

## 2. The Objective of Misappropriation of Business Opportunity

The objective of this tort is to "protect the labor—the so-called 'sweat equity'—that goes into creating a work" or product. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788 (5th Cir. 1999). In *International News Service* and *Gilmore*, the U.S. Supreme Court and the Dallas Court of Civil Appeals recognized that entities have a property interest in the skill, labor, and money that goes into creating a product. *See Int'l News Serv.*, 248 U.S. at 239–40; *Gilmore*, 269 S.W. at 863. In both cases, a news organization had sued a competitor that had taken the plaintiffs' published news stories and rewritten them before selling the repackaged story for profit. The plaintiffs complained that they were burdened with the expense of gathering the news while their competitors, relying on plaintiffs' hard work, had no such expenses but still reaped a profit in direct competition to the plaintiffs. Both courts held that the plaintiffs had a property interest, as against competitors, in the effort expended to create their products. *See Int'l News*, 248 U.S. at 239 (concluding that the defendant engaged in "unfair competition" by "taking material that has been acquired . . . as the result of organization and the expenditure of labor, skill, and money"); *Gilmore*, 269 S.W. at 863 ("There is a common-law property in facts and information collected and utilized by skill, labor, and expense, although the same information is available to any one who chooses to

---

[5] As noted above, Plaintiff does alleged various federal claims, namely trademark infringement and false designation, under the Lanham Act. These claims are not challenged by Defendants' motion.

collect it.").

Only once since *Gilmore* has another Texas court endeavored to refine the scope and purpose of this tort. In *U.S. Sporting Products*, a business sold recordings of animal sounds, and it obtained these sounds by either venturing into the animals' natural habitats or capturing the animals—a "labor intensive" process. 865 S.W.2d at 216. The defendant then purchased and copied the recordings, selling its "new" product in direct competition to the plaintiff. *Id.* The court of appeals held the defendant liable for misappropriation, and in doing so, it established the following elements of the tort:

> (i) the creation of plaintiff's product through extensive time, labor, skill and money,
> (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff, and
> (iii) commercial damage to the plaintiff.

*U.S. Sporting Prods.*, 865 S.W.2d at 218; *see also Alcatel USA*, 166 F.3d at 788. Although *U.S. Sporting Products* appears to give this tort great breadth, its "reach cannot be as broad as is indicated by this formulation of elements." *Synercom*, 474 F. Supp. at 39. It is necessarily limited by federal patent law. *Id.*

## B. Federal Patent Law

### 1. Purposes of Patent Law

Patent law has three general purposes: (1) to promote and reward innovation, (2) to promote the disclosure of inventions in order to stimulate further invention and free

7

competition, and (3) to assure that ideas in the public domain remain there for free use by the public. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979). These latter two concerns lead to the "ultimate goal of . . . bring[ing] new designs and technologies into the public domain through disclosure." *Bonito Boats*, 489 U.S. at 151. "In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (discussing trade dress infringement); *see also Bonito Boats*, 489 U.S. at 146 (noting that "the need to promote innovation and the recognition that imitation and refinement through imitation" are the "lifeblood of a competitive economy"). Thus, "free exploitation of ideas [is] the rule, to which the protection of a federal patent is the exception." *Bonito Boats*, 489 U.S. at 151.

The Supreme Court has therefore disfavored state laws that offer the "equivalent of a patent monopoly" to products unprotected by patent law and thus in the public domain. *Sears*, 376 U.S. at 233. In *Sears*, for example, patent law preempted an unfair competition claim even though the defendant sold lamps "substantially identical" to the plaintiff's lamps. 376 U.S. at 226. Because the state law would have prevented the copying of an unpatented article, it would have "block[ed] off from the public something which federal law has said belongs to the public." *Id.* at 232. That the plaintiff had "originated the pole lamp and made it popular [was] immaterial." *Id.* at 231. Nor did it matter that there could have been "'confusion' [among the public] as to who had manufactured these nearly identical" products. *Id.* at 232. The Court has reached similar conclusions in subsequent cases. *See*

*Compco*, 376 U.S. at 238–39 (permitting items in the public domain to be "copied at will" and "in every detail" and holding that unfair competition law that prevented the copying of an unpatented industrial design conflicted with patent law); *Bonito Boats*, 489 U.S. at 158 (preempting a state law that prevented the use of a certain process to duplicate unpatented boat hulls because it would have granted the original manufacturer with "rights against the world, similar in scope and operation to the rights accorded a federal patentee").

Because all ideas in the public domain must be "dedicated to the common good unless they are protected by a valid patent," *Lear, Inc. v. Adkins*, 395 U.S. 653, 668 (1969), the freedom to copy extends even to nonfunctional features, *see N. Shore Labs. Corp. v. Cohen*, 721 F.2d 514, 523 (5th Cir. 1983) ("The *Sears-Compco* doctrine also permits the copying of an unpatented article even if the design is 'unfunctional', i.e., not essential to the manufacture or use of the product."), *abrogated on other grounds as recognized by Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 549 n.17 (5th Cir. 1998). The fact that a design is "nonfunctional" cannot be a basis for imposing liability for the act of copying and selling, even though it may provide a basis for imposing liability under state law that regards confusing or deceptive marketing and labeling. *Compco*, 376 U.S. at 238.

### 2. The Role of State Law: Regulating Confusion

Despite their seemingly broad statements regarding preemption, *Sears* and its progeny establish that there is room for state regulation of unpatented products when such regulation aims to prevent consumer confusion. Although mere confusion is insufficient under *Sears*,

376 U.S. at 232, states may attempt to prevent consumer confusion by regulating trademarks, trade dress, and labeling and by prohibiting palming off. *Id.*; *Compco*, 376 U.S. at 238. Thus, states may protect even nonfunctional items that under trademark and trade dress law have a secondary meaning to consumers (i.e., items that identify the manufacturer or seller to the public). *See Bonito Boats*, 489 U.S. at 158; *see also In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1336 (C.C.P.A. 1982) ("[T]here exists a fundamental right to compete through imitation of a competitor's product. . . . An exception to the right to copy exists, however, where the product or package design under consideration is 'nonfunctional' and serves to identify its manufacturer or seller . . . ."). "The 'protection' granted a particular design under the law of unfair competition is thus limited to one context where consumer confusion is likely to result; the design 'idea' itself may be freely exploited in all other contexts." *Bonito Boats*, 489 U.S. at 158; *see also Restatement (Third) of Unfair Competition* § 16 cmt. a (1995) ("The freedom to engage in business and to compete for [customers] generally includes, in the absence of a patent or copyright, the freedom to copy the goods and marketing methods of others. However, the freedom to copy is qualified by the law of trademarks to the extent necessary to prevent confusion as to the source or sponsorship of goods or services.")

In these situations regarding consumer confusion, the state aims to prevent the competitor from deceiving the public as to the source of the product; it does not strive to prevent competitors from offering products identical to the original. *Cf. Streetwise Maps,*

*Inc. v. Vandam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998) ("The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product."). In preventing confusion, state law may actually have the limited effect of preventing some forms of copying, but this is a permissible goal because "confusion, not copying" creates liability. 1 *McCarthy on Trademarks and Unfair Competition* § 1:28 (4th ed.). Thus, "[w]hat is left to the state laws lies in the tort realm of deceit," *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1259 (5th Cir. 1971), and "those with the ingenuity to copy a popular but unpatented product are entitled to do so, as long as they do not run afoul of the unfair trade practice laws," *Roho, Inc. v. Marquis*, 902 F.2d 356, 360 (5th Cir. 1990).

Similarly, states may impose liability for misappropriating trade secrets. *Kewanee Oil*, 416 U.S. at 492. To be sure, this liability could effectively prevent competitors from copying the product, thereby granting patent-like rights. But by definition, trade secrets are not in the public domain, and in any event, the state law cannot go so far as to preclude a competitor from reverse-engineering a product. *Id.* at 476, 490. Regulation of trade secrets also has the element of "culpable conduct" (i.e., corporate espionage), an area of the law traditionally left to the state's police power. *Synercom*, 474 F. Supp. at 42.

Ultimately, courts are more likely to uphold state laws when the "restrictions on the use of unpatented ideas [are] limited to those necessary to promote goals outside the contemplation of the federal patent scheme," *Bonito Boats*, 489 U.S. at 166, such as

11

prevention of consumer confusion and nondisclosure of secrets not in the public domain.

## C. Analysis

Texas caselaw regarding misappropriation of business opportunity is sparse, and thus it is unclear how exactly Plaintiff's allegations fit within the tort's scope. But because Defendants do not challenge whether Plaintiff has properly stated a claim for misappropriation of business opportunity, the Court "proceed[s] upon the assumption that the activity involved in this case is unlawful under the common law doctrine of misappropriation, whatever may be the inherent limits of that doctrine." *Synercom*, 474 F. Supp. at 39. The inquiry then is whether Texas may punish the conduct that Defendants allegedly engaged in or whether federal patent law preempts such regulation. *Id.* The Court finds that patent law does prohibit state regulation in this instance.

### 1. The Core of Plaintiff's Claim Is Preempted

Despite its shifting focus between functional and nonfunctional features, the core of Plaintiff's claim is that Defendants have adopted its idea of selling bottlecap jewelry—an idea that Plaintiff believes it has the sole right to capitalize on because it was apparently the first entity to market bottlecap jewelry. States, however, cannot regulate ideas, *Synercom*, 474 F. Supp. at 43, and "free exploitation of ideas [is] the rule, to which the protection of a federal patent is the exception." *Bonito Boats*, 489 U.S. at 151. Imitation, simply, cannot be regulated by the states unless in an attempt to prevent confusion. *See In re Morton-Norwich Prods.*, 671 F.2d at 1336. As further discussed below, Plaintiff's state-law

12

claims do not allege consumer confusion, and the tort of misappropriation does not seek to remedy consumer confusion.

Because Plaintiff is primarily concerned with protecting its idea, a potential ruling on the merits in its favor would grant it the "equivalent of a patent monopoly." *Sears*, 376 U.S. at 233. The leading Supreme Court cases all seek to avoid this result. Indeed, the cases upholding state laws all recognized that the state laws still afforded competitors the opportunity to create an identical product. In *Goldstein*, for example, the state piracy law did not preclude competitors from recording the "same compositions in precisely the same manner and with the same personnel as appeared on the original recording." *Goldstein v. California*, 412 U.S. 546, 571 (1973). It merely prevented copying recordings. *Id.* at 548 n.1. And in *Kewanee Oil*, the state trade-secret law allowed competitors to create identical products by "reverse engineering" the original. 416 U.S. at 476. Plaintiff, however, seeks a ruling that would essentially prevent any competitor from producing a similar product, let alone an identical one, regardless of how the competing product was produced.

### 2. Plaintiff's Focus on Interchangeability Further Supports Preemption

Although the "line between the permissible and the impermissible exercise of state power [is] difficult to discern," *Synercom*, 474 F. Supp. at 40–41, one line is clearly drawn: competitors can freely copy functional products that are unpatented. Plaintiff admits that the interchangeable feature of its jewelry is functional, and it has expressly stated that its state-law claims are "directed to a functional aspect of the jewelry." Unsurprisingly then, it never

argues that its claim related to the functional, interchangeable feature is not preempted. To be sure, the focus of Plaintiff's arguments shifted from functional to nonfunctional aspects once Defendants raised patent concerns, but its claim nonetheless remains directed at the functional aspects of its jewelry.

Nor does it matter that Plaintiff has now focused its arguments on nonfunctional aspects. As noted above, the freedom to copy extends even to nonfunctional aspects. The fact that a design is "nonfunctional" cannot be a basis for imposing liability for the act of copying and selling, even though it may provide a basis for imposing liability under state law that regards confusing or deceptive marketing and labeling. *Compco*, 376 U.S. at 238. Thus, states can regulate nonfunctional aspects of a product only if they seek to promote goals not contemplated by patent law.

### 3. Plaintiff's Claim Does Not Promote Any Significant Goals Outside the Contemplation of Patent Law.

Patent law is less likely to preempt state law when the state law "promote[s] goals outside the contemplation of the federal patent scheme," *Bonito Boats*, 489 U.S. at 166. Here, however, misappropriation does not further any such goals.

First, this case apparently does not involve any "culpable conduct"; there is "no theft of trade secrets . . . [or] breach of a confidential relationship." *Synercom*, 474 F. Supp. at 42–43. Thus, applying the tort of misappropriation "would not be an exercise of the state police power, at least not to the extent of the [piracy] laws involved in *Goldstein* and [the trade-secret laws in] *Kewanee*." *Id.* at 43. Instead, the tort would regulate ideas and

concepts, which are "much closer to the focus of the federal patent . . . laws." *Id.* at 44.

Second, although the Supreme Court allows states to regulate trademarks and trade dress in an attempt to prevent consumer confusion, Plaintiff's state-law claims do not allege any consumer confusion. Plaintiff does not bring any state-law claims for trade dress infringement, trade name infringement, trademark infringement, or other related conduct. While it does allege that Defendants produce substantially similar products, this allegation falls short of alleging consumer confusion. Indeed, misappropriation of business opportunity is wholly unrelated to preventing confusion.

This is not to say that Plaintiff is precluded from asserting claims related to consumer confusion—just that it has failed to do so as a matter of state law. Plaintiff has, of course, asserted several *federal* claims that regard consumer confusion by bringing suit for trademark infringement and false description under the Lanham Act. Its ability to proceed on these claims is not affected by this order.

The only potential state goal "outside the contemplation of the federal patent scheme" is the protection of Plaintiff's "sweat equity"—the time, labor, skill, and money put into each product. Perhaps in some circumstances, this goal may be sufficient to overcome preemption. But as discussed above, when applied to Plaintiff's allegations, it would impermissibly prevent any competitor from profiting from the concept of bottlecap jewelry. *Cf. Goldstein*, 412 U.S. at 571 (upholding state law when "[n]o restraint ha[d] been placed on the use of an idea or concept"). For Plaintiff does not seek to protect the effort that went

15

into producing actual jewelry; instead, it essentially seeks to protect the effort used to create its business model and the idea of bottlecap jewelry. But *International News*, *Gilmore*, and *U.S. Sporting Products* only protected the resources used to create the actual products—the news stories and animal recordings. They did not protect the effort that led to the idea of gathering news and recording animal sounds. Indeed, those cases recognized that competitors could engage in the same businesses and sell the same products, as long as the competitor used its own effort (i.e., its own news gathering and recording) to create the competing product. And further, just as a patent, to an extent, protects the resources used in inventing a unique product, misappropriation also seeks to protect the resources used to create a product. In this sense, both federal and state law strive for similar goals, and the state's goal is not outside the contemplation of the federal patent scheme.

## Conclusion

For the foregoing reasons, Defendants' Rule 12(b)(6) Motion to Dismiss State Law Claims Due to Federal Preemption (Docket No. 7) is GRANTED.

It is so Ordered.

Signed this 4th day of October, 2010.

Royal Furgeson
Senior United States District Judge